ED BUXTON *et al.*, Plaintiffs-Appellants, v. WYLAND GALLERIES HAWAII, Defendant-Appellee.

Fourth District    No. 4—95—0190

Argued September 13, 1995.—Opinion filed November 3, 1995.

H. Kent Heller (argued), of Heller, Holmes & Associates, P.C., of Mattoon, for appellants.

Stephen L. Corn (argued) and Richard A. Tjepkema, both of Craig & Craig, of Mattoon, for appellee.

JUSTICE COOK delivered the opinion of the court:

Plaintiffs filed this action in the circuit court of Coles County. The circuit court dismissed the case for lack of personal jurisdiction over defendant. Plaintiffs appeal. We affirm.

There is no dispute as to the facts, which are set out in the complaint, filed October 25, 1994, and in the affidavit of Alan J. Castle, dated December 30, 1994.

Plaintiffs, Ed and Marilyn Buxton, are residents of the State of Illinois, residing in Charleston. Defendant, Wyland Galleries Hawaii, is a corporation which does business in the State of Hawaii as a retail fine art gallery, with offices in Waipahu. Defendant does not operate out of, or transact business in, the State of Illinois. Defendant does not advertise or engage in any conduct in the State of Illinois to solicit business. On February 1, 1994, while plaintiffs were in Hawaii, they entered into a written contract with defendant to purchase a painting by the artist Tabora for the price of $8,887.50. The contract was signed in Hawaii and all negotiations concerning the contract took place in Hawaii. The contract provided that the painting would remain in the artist's possession until he finished

preparations for possible publication. The purchase price included $195 for shipping, and a prepaid shipping block was checked. Defendant shipped the painting, "through intermediary shippers," from the State of Hawaii to plaintiffs in the State of Illinois.

The complaint alleges that prior to purchase plaintiffs were advised by defendant that in the event the painting was selected for publication its value would triple. On February 16, 1994, plaintiffs were notified by defendant that the painting had been selected for publication. On May 4, 1994, the painting was destroyed in shipment, by a fire in Pekin, Illinois. Plaintiffs allege defendant breached the contract in failing to deliver the painting to plaintiffs in Illinois, for which they seek damages in the amount of $28,500. After defendant was personally served in the State of Hawaii, defendant filed a special and limited appearance pursuant to section 2—301 of the Code of Civil Procedure (Code) (735 ILCS 5/2—301 (West 1992)).

Section 2—301(b) of the Code allows a special appearance to be supported by affidavit, and defendant submitted the affidavit of Castle, its general manager. Section 2—301(b) allows a court to consider such affidavits in ruling upon the objection to jurisdiction, as well as to hear evidence. Discovery may be taken, "provided such discovery is limited to the court's jurisdiction over the person of the defendant." (134 Ill. 2d R. 201(l).) Only the complaint and the affidavit were here presented to the trial court.

Amendments to the Illinois long-arm statute effective September 7, 1989, provide: "A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." (735 ILCS 5/2—209(c) (West 1992); cf. Rollins v. Ellwood (1990), 141 Ill. 2d 244, 271, 565 N.E.2d 1302, 1314 ("Illinois' long-arm statute is to be given a definite meaning and scope which does not fluctuate with every new pronouncement on the limits of Federal due process").) We need not determine whether jurisdiction in this case is permitted by the long-arm statute, because we conclude that jurisdiction is not permitted under the Constitution of the United States.

■ ■ The due process clause of the fourteenth amendment limits the power of a State to exercise jurisdiction over out-of-State defendants. The test is whether the defendant purposefully established "minimum contacts" in the forum State, and whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." (Burger King Corp. v. Rudzewicz (1985), 471 U.S. 462, 474, 476-77, 85 L. Ed. 2d 528, 542, 543-44, 105 S. Ct. 2174, 2183, 2184.) In contract cases, personal jurisdiction does not depend on such mechanical tests as the place of contracting or the place of per-

formance, but upon factors such as the place of negotiations and the place of contemplated future consequences. The mere making of a contract with a forum resident does not constitute a consent to jurisdiction. (*Burger King*, 471 U.S. at 478-79, 85 L. Ed. 2d at 545, 105 S. Ct. at 2185.) Minimum contacts analysis recognizes that two or more States may properly assume jurisdiction over a particular dispute. The question is not which State is in the best position to hear a dispute, although "inconvenience may at some point become so substantial as to achieve *constitutional* magnitude." (Emphasis in original.) (*Burger King*, 471 U.S. at 484, 483 n.26, 85 L. Ed. 2d at 548 & n.26, 105 S. Ct. at 2188 & n.26.) Inconvenient forum problems which could be resolved in the Federal courts by an interstate change of venue cannot be so resolved in State courts. (See *Burger King*, 471 U.S. at 477 & n.20, 85 L. Ed. 2d at 544 & n.20, 105 S. Ct. at 2185 & n.20; see also *Vinson v. Allstate* (1991), 144 Ill. 2d 306, 579 N.E.2d 857 (motion to dismiss based on doctrine of *forum non conveniens*).) The facts of each case must always be weighed in determining whether personal jurisdiction would comport with fair play and substantial justice. *Burger King*, 471 U.S. at 485-86, 85 L. Ed. 2d at 549, 105 S. Ct. at 2189.

Although each case must be decided on its facts, some consistent trends have developed. There will be jurisdiction where the claim arose out of defendant's liability-creating *activity* within the forum State, whether the complaint sounds in negligence, breach of warranty, or breach of contract. It is a more difficult question whether an unfulfilled promise to perform a contract within the State will support jurisdiction, not because the claim sounds in contract instead of tort, but because such a claim does not arise out of local *activity*. There is usually jurisdiction where a seller sends defective goods into a State, whether the claim is in contract or tort, except where just a single shipment is involved and its arrival is outside the normal course of the defendant's business. Likewise, there is usually jurisdiction in the seller's forum over regular commercial buyers (not mail-order consumer purchasers), although there is a question about one-shot commercial buyers. Single contract cases are difficult, but where any significant additional contact is present there will usually be jurisdiction. A personal appearance in the forum to solicit, negotiate or facilitate a contract is often a very significant contact. Where there is an ongoing commercial relationship, each party will typically have a substantial jurisdictional claim at home against the other. (See generally Louis, *Jurisdiction Over Those Who Breach Their Contracts: The Lessons of Burger King,* 72 N.C.L. Rev. 55 (1993) (hereinafter Louis).) According to Louis, there is usually jurisdiction over defen-

dant sellers, especially with regard to deficiencies in the goods themselves, except in the unique situation of a single sale solicited by the local buyer from a nonresident seller who does no other business within the forum State, at least where the seller makes the sale primarily to accommodate the buyer rather than gain a foothold in the buyer's market. Louis, 72 N.C.L. Rev. at 77-78.

In *Chung v. Nana Development Corp.* (4th Cir. 1986), 783 F.2d 1124, plaintiff, a Virginia resident, went to Alaska to buy reindeer horns from a company which sold that product to the Orient and required customers to take delivery in Alaska. When plaintiff was ready to depart, only 120 pounds of antlers were ready, and the company agreed to ship the remaining 380 pounds by air. The antlers had thawed by the time they reached Virginia, and plaintiff filed suit in Virginia. Following a bench trial and award of damages by the district court, the court of appeals reversed, citing *Burger King* for the proposition that defendant's contact with the State of Virginia was no more than the isolated or attenuated single transaction which has always been deemed inadequate to satisfy due process. *Chung*, 783 F.2d at 1126.

■ We believe *Chung* provides the proper analysis for resolving this case. In the present case, all negotiations in the formation of the contract took place in Hawaii. Defendant made no purposeful effort of its own to develop a market in Illinois, and payment was made in Hawaii. There was no agreement for a continuing business relationship beyond this single transaction in Hawaii. Nothing in the parties' contract or course of dealing put defendant on notice that it might be haled into court in Illinois. Defendant appears to have done everything possible to confine its business to its home State of Hawaii during this transaction and never had any other dealings with Illinois whatsoever. It only shipped goods to Illinois on this isolated occasion for the convenience of plaintiffs, so that the artist could finish preparations for publication. See *Chung*, 783 F.2d at 1128; see also *Bodine's, Inc. v. Sunny-O, Inc.* (N.D. Ill. 1980), 494 F. Supp. 1279, 1284 (no jurisdiction where plaintiff initiated transaction with a Florida defendant and delivery was made to a common carrier in Florida).

In this case, defendant did not send defective goods into this State. The fact that the goods happened to be destroyed here, without the fault of defendant, provides no basis for a finding of jurisdiction. Defendant's wrong was its failure to comply with its contract, and that wrong was the same whether the goods were never shipped from Hawaii or whether they were destroyed en route.

In *Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.* (1978), 66 Ill. App. 3d 789, 798, 383 N.E.2d 1379, 1386, it was said

that "the mere shipping of goods by the defendant or agreement to ship goods into Illinois may be sufficient to establish jurisdiction," and that it would not seem to matter whether defendant made only one shipment as long as the cause of action was based on that one shipment. In *Mergenthaler*, however, the defendant advertised in national magazines, sent mail solicitations into Illinois, and about 5% of its sales were made here. *Mergenthaler* cited *Willis v. West Kentucky Feeder Pig Co.* (1971), 132 Ill. App. 2d 266, 265 N.E.2d 899, but in *Willis* the defendant had contacted the buyer in Illinois, the parties had similar dealings in the past, and payment was made in Illinois to the delivery driver. In *Tabor & Co. v. McNall* (1975), 30 Ill. App. 3d 593, 594, 333 N.E.2d 562, 563, there were seven contracts, negotiated by mail and telephone from one State to the other, and the contracts called for a continuing relationship, the delivery by defendant of a large amount of grain in Illinois. In *Swissland Packing Co. v. Cox* (1994), 255 Ill. App. 3d 942, 944, 627 N.E.2d 686, 688, the court stated that "[b]y contracting with an Illinois corporation to deliver goods [(calves)] in Illinois, defendant has submitted himself to the jurisdiction of [the] Illinois courts." The court also pointed out, however, that defendant had sold calves to plaintiff on two prior occasions, the parties had corresponded by mail and telephone over a period of two years, the parties negotiated the present contract by mail and telephone, and defendant returned the signed written contract to plaintiff in Illinois.

Our review is *de novo* in this case, where no evidence was taken on defendant's motion attacking jurisdiction. (*E.A. Cox Co. v. Road Savers International Corp.* (1995), 271 Ill. App. 3d 144, 148, 648 N.E.2d 271, 275; *cf. Dilling v. Sergio* (1994), 263 Ill. App. 3d 191, 195, 635 N.E.2d 590, 593.) The trial court properly concluded that defendant did not have minimum contacts with the State of Illinois on which jurisdiction could be based.

Affirmed.

KNECHT, P.J., and STEIGMANN, J., concur.