**2007 EAST MEADOWS, L.P., Appellant,**

v.

**RCM PHOENIX PARTNERS, L.L.C., Appellee.**

**No. 05–08–00987–CV.**

Court of Appeals of Texas, Dallas.

April 14, 2010.

Rehearing Overruled May 18, 2010.

202

Kenneth B. Chaiken, Chaiken & Chaiken, P.C., Dallas, TX, for Appellant.

John W. Slates, Gardere Wynne Sewell, LLP, Dallas, TX, for Appellee.

Before Justices MORRIS, O'NEILL and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

Appellant 2007 East Meadows, L.P. filed suit in Texas against appellee RCM Phoenix Partners, L.L.C. RCM Phoenix filed a special appearance contesting the trial court's jurisdiction. East Meadows appeals the trial court's order granting the special appearance. We affirm the trial court's order.

### Background

This lawsuit arises out of a Purchase and Sale Agreement (Agreement) by and between RCM Phoenix and Eureka Holdings Acquisitions, L.P. for transfer of ownership of the Phoenix Apartments located in Indianapolis, Indiana. Seller RCM Phoenix is a Connecticut limited liability company having its principal office and place of business in Connecticut. Purchaser Eureka Holdings is a Texas entity. The First Amendment to the Agreement references assignment of Eureka Holdings' rights under the Agreement to East Meadows. East Meadows is an Indiana limited partnership with its principal place of business in Dallas, Texas.

Sale of the Phoenix Apartments property was not completed. East Meadows filed suit against RCM Phoenix in Dallas, Texas. The claims raised by East Meadows were for declaratory judgment, breach of contract, specific performance, common law and statutory fraud, and constructive trust.

RCM Phoenix filed a special appearance. Following an evidentiary hearing, the trial court granted RCM Phoenix's special appearance and dismissed East Meadows' lawsuit for lack of personal jurisdiction. The trial court did not file findings of fact or conclusions of law. East Meadows filed this appeal.

### Standard of Review

Whether a court can exercise personal jurisdiction over a nonresident defendant is a question of law, and thus we review de novo the trial court's determination of a special appearance. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574

(Tex.2007); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). When, as here, the trial court does not file findings of fact and conclusions of law in support of its special appearance ruling, we infer all facts necessary to support the judgment and supported by the evidence. *Moki Mac*, 221 S.W.3d at 574 (citing *BMC Software*, 83 S.W.3d at 795).

### In Personam Jurisdiction

 Texas courts may assert *in personam* jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction comports with federal and state constitutional due process guarantees. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex.2009). The long-arm statute's broad language allows Texas courts to "reach as far as the federal constitutional requirements of due process will allow." *Moki Mac*, 221 S.W.3d at 575 (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991)). Under constitutional due process analysis, personal jurisdiction is achieved "when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *Moki Mac*, 221 S.W.3d at 575 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The purpose of minimum contacts analysis is to protect a nonresident defendant from being haled into court when its relationship with the forum state is too attenuated to support jurisdiction. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002). "Significant contacts suggest that the defendant has taken advantage of forum-related benefits, while minor ones imply that the forum itself was beside the point." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex.2010). Only if minimum contacts are established does the court consider the second prong of the constitutional due process analysis-whether maintenance of the action offends traditional notions of fair play and substantial justice. *See Clark v. Noyes*, 871 S.W.2d 508, 520 (Tex.App.-Dallas 1994, no pet.).

 A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *BMC Software*, 83 S.W.3d at 795–96. On appeal, East Meadows asserts specific jurisdiction as the basis for personal jurisdiction over RCM Phoenix. Specific jurisdiction is dispute-specific and it attaches when the plaintiff's cause of action arises out of or relates to the nonresident defendant's contacts with the forum state. *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 410 (Tex.App.-Houston [14th Dist.] 1997, no writ). In a specific jurisdiction analysis, we focus on the relationship among the defendant, the forum, and the litigation. *Retamco*, 278 S.W.3d at 338. Specific jurisdiction arises when (1) the defendant purposefully avails itself of the privilege of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities. *Id.* In determining whether a defendant has purposefully availed itself of a forum, we consider three factors. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person. *Id.* at 339. Second, the contacts must be purposeful rather than random, fortuitous, or attenuated. *Id.* Third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.* What is important is the quality and nature of the defendant's contacts with the forum state rather than their number. *Id.*

### Burden of Proof

The plaintiff bears the initial burden to plead sufficient allegations to bring a nonresident defendant within the reach of the Texas long-arm statute. *Id.* at 338; *BMC Software,* 83 S.W.3d at 793. Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden of negating all bases of jurisdiction alleged by the plaintiff. *BMC Software,* 83 S.W.3d at 793; *Capital Tech. Info. Servs., Inc. v. Arias & Arias Consultores,* 270 S.W.3d 741, 748 (Tex.App.-Dallas 2008, pet. denied) (en banc). "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Kelly v. Gen. Interior Constr., Inc.,* 301 S.W.3d 653, 658 (Tex.2010). The defendant can discharge its burden to negate those allegations on either a factual or legal basis:

> Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction.

*Id.* at 659.

### Analysis

East Meadows satisfied its initial burden, pleading allegations of breach of contract and fraud by RCM Phoenix that were sufficient to invoke jurisdiction under the Texas long-arm statute. *See Marchand,* 83 S.W.3d at 793. However, in this case, merely pleading was not enough. When challenged by RCM Phoenix, East Meadows also had to present evidence that RCM Phoenix's relevant acts (i.e., those connected to East Meadows' claims) occurred, at least in part, in Texas. *See Gen. Interior Constr.,* 301 S.W.3d at 660–61.

RCM Phoenix supported its special appearance, and sought to negate bases of jurisdiction alleged by East Meadows, with the affidavit of its manager. The affidavit attests: The Agreement does not require RCM Phoenix to perform any of its obligations in Texas; no employee or representative of RCM Phoenix traveled to Texas in connection with the negotiation or execution of the Agreement; RCM Phoenix did not make any express representations, warranties, or covenants to Eureka or East Meadows in Texas; RCM Phoenix is a limited liability company with its principal place of business in Connecticut; and, RCM Phoenix is not registered to do business in Texas, has no office or place of business in Texas, has no officers or employees in Texas, is not required to maintain and does not maintain a registered agent for service of process in Texas, has no bank accounts in Texas, does not own real or personal property in Texas, does not design, manufacture, or sell products or services in Texas, does not market or advertise in Texas, does not maintain an interactive website that would allow Texas residents to place orders via the Internet for products or services to be delivered, in whole or in part, in Texas, and has not purposefully availed itself of the benefits and protections of Texas law.

In support of its contention that specific jurisdiction exists over RCM Phoenix,

East Meadows asserts RCM Phoenix transacted business in Texas when it marketed its property to a Texas domestic entity; entered into a contract with East Meadows which is performable, at least in part, in Texas; performed some required contractual obligations in Texas; and, committed torts in Texas. Therefore, we consider whether RCM Phoenix, through its conduct, triggered specific jurisdiction.

■■■ East Meadows first asserts that RCM Phoenix triggered specific jurisdiction because it marketed its property to a Texas entity, Eureka Holdings. Targeting marketing efforts in a state to generate business there may justify jurisdiction in disputes arising from that business. *See Moki Mac*, 221 S.W.3d at 575–76. However, we begin with the observation that RCM Phoenix did not reach out beyond the borders of Connecticut to solicit business with the original purchaser, Eureka Holdings, concerning the sale of the Phoenix Apartments property. RCM Phoenix did not market the Indiana real property in Texas; the marketing of this property was handled by Marcus & Millichap, a Connecticut broker. It was the third party Connecticut broker that facilitated contact between the foreign corporation, RCM Phoenix, and the domestic entity, Eureka Holdings. *See Rauscher Pierce Refsnes, Inc. v. Great Sw. Sav., F.A.*, 923 S.W.2d 112, 115 (Tex.App.-Houston [14th Dist.] 1996, no writ) (broker whose duty consists of bringing parties together to negotiate sale is "middleman" rather than "agent" of either party). Contact between the third party broker, Marcus & Millichap, and Eureka Holdings does not support a claim of purposeful availment by RCM Phoenix.

East Meadows next contends RCM Phoenix entered into a contract performable, at least in part, in Texas. Specifically, East Meadows asserts RCM Phoenix contracted to make a series of deliveries of due-diligence documents and information to East Meadows in Texas. RCM Phoenix does not dispute this term of the Agreement. However, RCM Phoenix's only actual contact with Texas, sending a limited number of due diligence documents and monthly rent rolls for the property, did not establish sufficient minimum contacts with Texas to support jurisdiction. *See U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 763 (Tex.1977) (contracting with Texas company and submitting contractually required payments to company's Texas place of business do not alone necessarily establish sufficient minimum contacts to demonstrate specific jurisdiction); *Olympia Capital Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 417–18 (Tex.App.-Dallas 2008, no pet.) (financial statements and monthly fund asset valuations sent for over a year to six funds that were parties to agency and administration agreement and nine Texas investors in the funds do not establish specific jurisdiction over defendant).

■■■ East Meadows further asserts RCM Phoenix is subject to personal jurisdiction because the Agreement provided a Dallas, Texas address for any notices to the purchaser. There is no evidence, however, that any such notices were delivered to the person designated in the contract for delivery of notices to the purchaser. Moreover, contracting with a Texas company, exchanging information, or communicating with a Texas company while performing a contract do not alone support jurisdiction, but are factors to consider. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Kelly Inv., Inc. v. Basic Capital Mgmt., Inc.*, 85 S.W.3d 371, 375 (Tex. App.-Dallas 2002, no pet.). Furthermore, "the Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests, or on 'conceptualistic ... theories of place of contracting or of

performance.' " *Burger King Corp.*, 471 U.S. at 478, 105 S.Ct. 2174 (citing *Int'l Shoe Co.*, 326 U.S. at 319, 66 S.Ct. 154). "Prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are the appropriate factors. *Burger King Corp.*, 471 U.S. at 479, 105 S.Ct. 2174.

East Meadows next contends that RCM Phoenix contracted to close the real estate transaction in Texas, and that this constitutes an additional purposeful contact with Texas by RCM Phoenix. As an initial observation, we note that no real estate closing took place in Texas. Specific jurisdiction exists where the cause of action "arises or is related to an activity conducted within the forum." *BMC Software*, 83 S.W.3d at 796. Although each case must be decided on its facts, the consistent trend is that specific jurisdiction arises out of a defendant's liability-creating activity within the forum state. *See Buxton v. Wyland Galleries Hawaii*, 275 Ill.App.3d 980, 212 Ill.Dec. 507, 657 N.E.2d 708, 711 (1995), *appeal denied*, 165 Ill.2d 548, 214 Ill.Dec. 856, 662 N.E.2d 422 (1996) ("more difficult question" as to whether unfulfilled promise to perform contract within state will support jurisdiction, because claim does not arise out of local activity).

Relying on language in the Agreement which provides that the closing of the transaction "shall take place at the office of Purchaser's title company," East Meadows contends that the escrow closing of this transaction was to take place in Texas at East Meadows' title company. East Meadows' interpretation ignores the remainder of the language of the Agreement stating that the closing shall take place at the purchaser's title company "... or at such other place as the parties may mutually and reasonably agree...." The contract did not specify Texas as the location for closing, and the record is not clear that the parties had ever agreed on that detail.

Further, there is no evidence in the record that the parties contemplated at the time of execution of the Agreement that the closing was to take place in Texas. All references in the Agreement to the escrow agent and to a title company are to Indianapolis, Indiana locations. The Agreement contains several references to "Escrow Agent" identified as Lawyers Title Insurance Corporation in Indiana, Indianapolis. The Agreement provides that any notice to "Escrow Agent" shall be given to Lawyers Title Insurance Corporation, Indianapolis, Indiana and that a non-refundable deposit would be made through Lawyers Title Insurance Corporation as Escrow Agent. The Agreement states that if any of the consents and approval required by the "conditions precedent" paragraph are denied or not obtained by the closing date, either purchaser or seller may terminate the Agreement by written notice to the other and Escrow Agent. It further provides that seller and purchaser shall negotiate a form of escrow agreement acceptable to the seller, purchaser, and Escrow Agent. According to the Agreement, the purchase price would be wired to Escrow Agent and disbursed in accordance with instructions from the seller to Escrow Agent. The Amendment states that on the date of RCM Phoenix's execution of the Amendment, East Meadows shall instruct the Escrow Agent to release a portion of a deposit to RCM Phoenix.[1]

1. The record contains the First Amendment to the Agreement, which references the assignment from the original purchaser Eureka Holdings to East Meadows. In the Amendment, East Meadows and RCM Phoenix confirm that subject to the terms and conditions of the Amendment regarding the closing date, execution of the Amendment in counterparts,

The Agreement also contains provisions regarding information to be delivered to the purchaser's title company but does not specifically identify the purchaser's title company. However, the Agreement provides that the purchaser shall "cause title to the Property to be searched and a title insurance commitment to be issued by Lawyers Title Insurance Corporation ....," the Indianapolis, Indiana entity identified in the Agreement as "Escrow Agent." Attached to the Agreement are "permitted exceptions" for the Lawyers Title Insurance Corporation title policy.

East Meadows also relies on the testimony of the manager of RCM Phoenix to establish the closing was to take place in Dallas, Texas. When questioned with regard to the closing provision of the Agreement, he testified that he assumed the closing would occur in Indianapolis, Indiana, the location of the property. He testified he was aware the closing documents had to be delivered to the purchaser's title company, and if that title company was in Dallas, Texas, the delivery requirement would apply to Dallas, Texas, and if the purchaser's title company was in Dallas, the closing would occur in Dallas. Testimony of East Meadows' witness was that he never personally informed RCM Phoenix of a closing in Dallas, but it was his understanding that this information was conveyed to RCM Phoenix. He did not testify from personal knowledge. East Meadows' speculation that RCM Phoenix was informed the closing was to take place in Dallas does not support haling RCM Phoenix to court in Texas. *See Le Meridien Hotels & Resorts v. LaSalle Hotel Operating P'Ship, I, L.P.,* 141 S.W.3d 870, 879–80 (Tex. App.-Dallas 2004, no pet.), *overruled on other grounds by Arias & Arias Consultores,* 270 S.W.3d at 755 (refusing to allow speculation to defeat evidence opposing jurisdictional allegations).

■ The Agreement provides that the closing will take place at the office of the purchaser's title company or such other location as the parties may agree. The purchaser had the right to cause the closing to occur in Texas, if that was the location of the purchaser's title company. There is nothing to suggest that it mattered to RCM Phoenix where the closing of the transaction occurred. "If ... the plaintiff's decision to perform the contractual obligation within its own forum state is totally unilateral, it cannot be viewed as purposeful on the part of the nonresident and the weight is necessarily diminished." *Command–Aire Corp. v. Ontario Mech. Sales & Serv., Inc.,* 963 F.2d 90, 94 (5th Cir.1992). Based on the record before us, we disagree with East Meadows' contention that RCM Phoenix's agreement, if any, to close the real estate transaction in Texas constituted a purposeful contact with Texas supporting exerting personal jurisdiction over RCM Phoenix.

East Meadows finally alleges RCM Phoenix committed fraudulent acts that were directed to East Meadows in Texas or which involved concealment of information RCM Phoenix was required under the Agreement to disclose to East Meadows in Texas. In particular, East Meadows asserts RCM Phoenix concealed material facts and information about the property, delayed delivery to East Meadows of other information about the property, made material misrepresentations to East Meadows and concealed changes in the truthfulness

and the effective date of the Amendment, all terms, conditions and provisions of the Agreement remain unmodified and unchanged.

That includes the provisions regarding "Escrow Agent," and references to Lawyers Title Insurance Corporation.

of one or more of the warranties and covenants in the Agreement.[2]

RCM Phoenix denies these allegations. RCM Phoenix further contends East Meadows has put forth no actual evidence that RCM engaged in any fraudulent conduct in Texas or concealed information RCM Phoenix was required to disclose to East Meadows in Texas. RCM Phoenix asserts on appeal that East Meadows' fraud claims are nothing more than factually unsupported allegations.

■■■■ We agree. East Meadows offered no evidence regarding the alleged fraud by RCM Phoenix at the hearing on the special appearance. That RCM Phoenix is alleged to have committed a tort in Texas is not dispositive of the jurisdictional issue presented; such allegations alone do not give Texas courts jurisdiction over a nonresident. *See Hoppenfeld v. Crook*, 498 S.W.2d 52 (Tex.Civ.App.-Austin 1973, writ ref'd n.r.e.). Specific jurisdiction is not established merely by allegations or evidence that a nonresident committed a tort in the forum state or "directed a tort" at the forum state. *Michiana v. Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790–92 (Tex.2005). If the plaintiff alleges an action in tort that arose out of an act committed in Texas, the necessary proof is that the purposeful act was committed in this state. *See Gen. Interior Constr.*, 301 S.W.3d at 659 (plaintiff must plead, and when challenged by defendant, present evidence that defendant's relevant acts connected to plaintiff's claims occurred, at least in part, in Texas). In the record before us, we find no communication by RCM Phoenix directed to and intended to be relied upon by East Meadows in Texas that, if false, gives rise to the common law or statutory fraud causes of action alleged by East Meadows.

■■■■ Finally, we note that the Agreement includes a choice of law provision specifying that it shall be governed by and construed in accordance with the laws of Indiana. While a foreign choice of law provision does not prevent Texas courts from also exercising personal jurisdiction, a choice of law provision cannot be ignored when considering whether a defendant purposefully invoked the benefits and protections of a state's laws. *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 598 (Tex.2007); *Michiana*, 168 S.W.3d at 792 (citing *Burger King Corp.*, 471 U.S. at 482, 105 S.Ct. 2174); *Preussag Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 125 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.) (choice of law provision warrants some weight in considering whether defendant purposefully invoked benefits and protection of state's law for jurisdictional purposes). Here, the choice of law provision of the Agreement does not support an inference of RCM Phoenix's purposeful availment of the benefits of conducting activities in Texas. *See Olympia Capital Assocs.*, 247 S.W.3d at 417.

### Conclusion

Giving the choice of law provision its due weight and considering the totality of the facts of the case and the quality and nature of the alleged contacts, we conclude

---

**2.** The Agreement contains representations, warranties and covenants that were to be provided by RCM Phoenix to East Meadows. They include: that there are no undisclosed contracts effecting the property; that there are no assessments levied, threatened or pending against the property; that there are no pending or threatened condemnation or similar proceeding against the property; that there are no undisclosed civil, administrative, arbitration or other actions, suits or proceedings pending or threatened against or affecting the property; and, that there are no facts which could create an event or default under the assumable loan which is the subject of the Agreement.

the evidence fails to show that RCM Phoenix had sufficient minimum contacts to support the exercise of specific jurisdiction. Therefore, we need not decide whether the exercise of jurisdiction over RCM Phoenix comports with the traditional notions of fair play and substantial justice. We conclude the trial court did not err in granting RCM Phoenix's special appearance. Accordingly, we resolve East Meadows' sole issue against it.