**AFFIRM and Opinion Filed December 11, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00901-CV**

**PROCARSA S.A. DE C.V., Appellant**
**V.**
**BLUE RACER MIDSTREAM, LLC, Appellee**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-07310**

## MEMORANDUM OPINION

Before Justices Molberg, Nowell, and Kennedy
Opinion by Justice Molberg

Appellant Procarsa S.A. de C.V. appeals the trial court's order denying its special appearance, arguing the trial court erred because appellee Blue Racer Midstream, LLC failed to carry its burden to show the court had specific jurisdiction over Procarsa S.A. de C.V. We affirm in this memorandum opinion.

### BACKGROUND

On June 8, 2021, Blue Racer filed its original petition, asserting claims for strict products liability, breach of warranty, negligent misrepresentation, and negligence against defendants Procarsa USA Inc. and Procarsa Tube & Pipe

Company, Inc., two entities based in Brownsville, Texas. Blue Racer alleged it purchased pipe in Dallas that had been manufactured by the defendants in Mexico, the defendants represented and warranted that the pipe met the American Petroleum Institute's specifications and requirements, the pipe failed during testing, and subsequent lab testing "determined that the failure was caused by defects in the pipe welds that occurred during the manufacturing process, which resulted in the failure of the weld lines to properly bond."

In its second[1] and third amended petitions, Blue Racer added claims against defendant Industrial Procarsa S.A. de C.V. and appellant Procarsa S.A. de C.V., two Mexican entities headquartered in Ciudad Frontera, Coahuila, Mexico. In the third amended (live) petition, Blue Racer generally alleged the court has personal jurisdiction over all parties and claims and stated that "[a]ll parties are doing business, are incorporated in, or otherwise maintain principal places of business in the State of Texas."

Blue Racer is "a natural gas midstream company based in Dallas" with operations in Ohio and West Virginia. Blue Racer alleged Procarsa[2],

> is a manufacturer, seller, distributor, and importer of carbon steel tubular goods for use in a variety of applications, including natural gas pipelines. Procarsa manufactures its steel products in Mexico, and then sells them from its Texas headquarters to customers throughout Texas and the United States. Procarsa deliberately conceals which of its

---

[1] Blue Racer also sued Tuberias Procarsa S.A. de C.V. in the second amended petition but dropped its claims against this other entity in the third amended petition.

[2] Blue Racer referred to all of the Procarsa entities collectively as "Procarsa" in the remainder of its petition.

family of entities is responsible for the pipe it manufactures and supplies. This is not disclosed to end-users, nor was it discovered until this lawsuit was filed.

In Dallas, Blue Racer purchased pipe manufactured by Procarsa for use in Blue Racer's pipeline construction project in West Virginia, "and the material considerations relating to its decision to purchase the specific pipe in question occurred in Dallas." "Markings, etchings, and/or stamps [on the pipe] showed" the pipe was manufactured by Procarsa, which "was aware of the specific, planned use of the pipe, and made express representations and warranties concerning its attributes."

Procarsa represented and warranted that the pipe met "the requirements and specifications set forth in the American Petroleum Institute's Specification 5L for [API 5L X65M PSL 2] pipe," meaning the pipe has "very specific characteristics as it relates to yield strength, tensile strength, and welds, and requires that the pipe be able to withstand hydrostatic testing without leakage through the weld seam or pipe body."

Blue Racer alleged the pipe was the appropriate grade for the twenty-four-inch pipeline it was constructing, and it used the pipe for its intended purpose. On or about December 19, 2019, the pipeline "was hydrostatically tested in anticipation of it being placed into operation. The pipeline was unable to handle hydrostatic pressure and ruptured during the testing process." The ruptured pipe section was removed and tested in a metallurgical lab, with the participation of Procarsa's

representatives. The lab determined "the failure was caused by defects in the pipe welds that occurred during the manufacturing process, which resulted in the failure of the weld lines to properly bond."

Blue Racer alleged that,

[b]y manufacturing and selling defective pipe, Procarsa failed to comply with its express and implied warranties and placed defective, unreasonably dangerous product into the stream of commerce. As a result, Blue Racer has sustained significant damage associated with the loss of the pipe, efforts to repair the ruptured pipe, and metallurgical testing of the ruptured pipe, for which it hereby demands compensation.

Blue Racer also alleged that it learned during discovery "that previously undisclosed entities were involved with the manufacture of the pipe at issue," which had been "concealed by Procarsa and could not have been discovered by Blue Racer through the exercise of any level of care or diligence." Blue Racer asserted causes for strict products liability, breach of warranty, negligent misrepresentation, and negligence.

Procarsa S.A. de C.V. filed an amended special appearance arguing it is subject to neither the court's general jurisdiction nor specific jurisdiction because it "has no case-related contacts with the State of Texas." Procarsa S.A. de C.V. "has never sold, distributed, manufactured, or placed products in the stream of commerce in Texas" and "does not conduct any business in the State of Texas." It is a company "whose only purpose is to test and certify certain products manufactured by [Procarsa S.A. de C.V.'s] only client, defendant Industrial Procarsa, S.A. de C.V., a

separate and distinct Mexican corporation with its principal place of business in Coahuila, Mexico."

Procarsa S.A. de C.V. contended that its "only contact with the United States, albeit not with Texas, relates to its certification by the American Petroleum Institute, a nonprofit entity originally incorporated in New York and headquartered in Washington, D.C."

Procarsa S.A. de C.V. supported its special appearance with declarations from its legal representative and Procarsa Tube & Pipe's director, as well as deposition excerpts from its legal director. Jose Neira Olvera (Neira) stated he is the legal representative and attorney for Procarsa S.A. de C.V., whose "sole corporate purpose and function is to provide testing and certification services to verify other companies' compliance with certain manufacturing processes and standards in Mexico." Procarsa S.A. de C.V. is not registered to do business in Texas, and has no operations, offices, other places of business, employees, property, or bank accounts in Texas. It "does not sell, distribute, or place any products in the stream of commerce in Texas, or anywhere else in the world." Procarsa S.A. de C.V.'s only connection to the United States is its certification by API. Procarsa S.A. de C.V. "had nothing to do with the design, manufacture, sale, or export of the pipe" at issue in the suit.

Neira stated Procarsa S.A. de C.V. has never performed any work for Blue Racer, and "has never spoken to or otherwise communicated with anyone employed

by, affiliated with, or acting on behalf of Blue Racer . . . ." Its involvement with the events at issue in the suit was limited to providing "certain testing and certification services to (and requested by) Industrial Procarsa, S.A. de C.V., the Mexican entity that manufactured and exported the pipe at issue" in the suit.

In his deposition, Neira testified Procarsa S.A. de C.V.'s business involved "the service of certification" and "the monitoring of processes and testing." Procarsa S.A. de C.V. monitors the production of Industrial Procarsa and no other entities. Procarsa S.A. de C.V. services Industrial Procarsa when Industrial Procarsa sends it a written work order, which lists the client for which Industrial Procarsa is manufacturing a product and the type of pipe or product required. He said that, when Procarsa S.A. de C.V. receives a work order from Industrial Procarsa, the product has not yet been manufactured—Procarsa S.A. de C.V. "steps in and monitors the full fabrication and manufacturing process." After manufacturing is completed, Procarsa S.A. de C.V. performs testing or inspection for ultimate certification of the product. Industrial Procarsa pays Procarsa S.A. de C.V. for its inspection services. Neira said Procarsa S.A. de C.V. never contacts Industrial Procarsa's client. Procarsa S.A. de C.V. holds an API license and performs testing and inspection services to issue API certifications on pipe manufactured by Industrial Procarsa. Given that Procarsa S.A. de C.V. only provides its services to Industrial Procarsa, counsel to Blue Racer questioned Neira why Procarsa S.A. de C.V. employs a sales

representative. He responded, "She's the one who receives all our orders from Industrial Procarsa."

Neira acknowledged Procarsa S.A. de C.V. did inspections for Industrial Procarsa's client Steel Professionals but said Procarsa S.A. de C.V. never contacted Steel Professionals about the pipe in question. Procarsa S.A. de C.V. became aware of the failure of the pipe in 2020. Neira said Procarsa S.A. de C.V. did not send a representative to the site of the failure, but he said he traveled to Texas to observe the post-rupture testing. He did not speak with anyone from Steel Professionals or Blue Racer about the post-rupture testing but did speak with Leo Vega from Stress Engineering.

Sergio Vigil Gonzalez (Sergio) stated in his declaration he is the director of defendant Procarsa Tube & Pipe, a Texas corporation based in Brownsville whose "sole corporate purpose is for the import and export of structural steel and piping products." Procarsa Tube & Pipe purchased the pipe at issue from Industrial Procarsa, a Mexican corporation based in Coahuila that "is the legal entity that manufactured that pipe in 2019, and exported it to Texas." Procarsa Tube & Pipe in turn sold the pipe to Steel Professionals. Procarsa S.A. de C.V. "was not involved in any way in the design, manufacture, sale, or export of the pipe at issue in this litigation."

Blue Racer responded to Procarsa S.A. de C.V.'s amended special appearance, contending Procarsa S.A. de C.V.'s contacts included its participation

–7–

in the manufacture of the pipe in question, including the API-required testing and inspection of the pipe; Procarsa S.A. de C.V.'s representations to Steel Professionals and Blue Racer regarding the API specifications and performance ratings; and Procarsa S.A. de C.V.'s participation in the post-rupture inspection and testing of the pipe in Texas.

Blue Racer supported its response with evidence, including additional excerpts from Neira's testimony. Neira acknowledged that according to API licensing information, Procarsa S.A. de C.V.'s license was as a manufacturer of line pipe. He said API listed them as manufacturers because they "certify the processes which comply with the requirements of API."

Blue Racer also included additional deposition testimony from Sergio. He testified that Procarsa Tube & Pipe is incorporated in Texas and that he is one of its directors along with his brothers, Rufino Vigil Gonzalez and Eduardo Vigil Gonzalez. Although the company is based in Brownsville, he said he does not work there. Sergio also appeared and was deposed as Procarsa USA's designated representative.

In a request for production attached to Blue Racer's response, Procarsa S.A. de C.V. acknowledged that, in addition to Neira, former employee Fernando Osorio attended the post-rupture inspection in Texas. Procarsa S.A. de C.V. answered interrogatories, stating that it monitored production of the pipe at issue at Industrial Procarsa and tested the pipe in Mexico to ensure its compliance with API standards.

Blue Racer also included excerpts of the deposition testimony of Steel Professionals' representative Darrin Kelley. He testified API "has managed petroleum specifications around the world" since its inception. He said API-certified pipe is monogrammed or stamped after testing has been completed to "verify the metallurgical under spectrographic analysis," the chemical composition, and the pipe's ultimate tinsel and yield. A facility must have an API license. When the stencil of certification is applied, the pipe is represented as meeting "every aspect of that specification." The standard specification gives the end-user some indication of how the product is going to perform. He said Steel Professionals relies on the representation that the pipe meets the standard in question. As the entity certifying the pipe, Procarsa S.A. de C.V. provided a mill test report to Steel Professionals, which then provided the report to Blue Racer. The mill test report is a representation by Procarsa S.A. de C.V. that the pipe in question meets specifications and characteristics as outlined in the mill test report. Kelley said, in his opinion, the pipe purchased by Blue Racer did not satisfy the API specifications.

Blue Racer's evidence also showed, among other things, the following:

- Neira—Procarsa S.A. de C.V.'s representative—wrote to Steel Professionals on "Tuberias Procarsa S.A. de C.V." letterhead on December 21, 2019, to inform it that Procarsa Tube & Pipe was proceeding with an investigation to determine the origin of the pipe failure;

- Procarsa S.A. de C.V. prepared a mill test report for client Steel Professionals setting forth testing results and stating the pipe was certified according to API standards;

- an API audit report from April 2019 stated Procarsa S.A. de C.V. is a manufacturer of various pipes;

- a certificate of authority to use the official API monogram issued by API, stating the scope of the license included the manufacture of various pipes;

- a printout from the API website indicating Procarsa S.A. de C.V. is a manufacturer of various pipes;

- and a printout from another Mexican entity's website stating that, in 1993, it "acquired Procarsa SA. de CV, located in Ciudad Frontera, Coahuila, dedicated to the fabrication of large diameter steel pipes."

After a hearing, the trial court denied Procarsa S.A. de C.V.'s special appearance, and this appeal followed.

## DISCUSSION

### *Standard of review*

Whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). The plaintiff has the initial burden to plead allegations sufficient to confer jurisdiction; the burden then shifts to the defendant to negate all potential bases for personal jurisdiction pleaded by the plaintiff. *See TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 n.4 (Tex. 2016). The defendant can negate the basis for jurisdiction "on either a factual or legal basis." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). Factually, "the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations," and the plaintiff can then respond with evidence affirming its allegations. *Id.* Legally, the defendant can show that, even if true, the plaintiff's alleged facts do not

–10–

establish jurisdiction. *Id.* "If the parties present conflicting evidence that raises a fact issue, we will resolve the dispute by upholding the trial court's determination." *TV Azteca*, 490 S.W.3d at 36 n.4. We imply all facts necessary to support the judgment and supported by the evidence when the trial court does not issue findings of fact and conclusions of law, as here. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

### 1. Minimum contacts

Texas courts may exercise personal jurisdiction over a nonresident if Texas's long-arm statute authorizes the exercise of jurisdiction, and the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). Texas's long-arm statute reaches as far as due process allows. *TV Azteca*, 490 S.W.3d at 36. Due process allows personal jurisdiction over a nonresident, first, when the nonresident has "minimum contacts" with Texas, and second, when the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985).

The nonresident defendant has minimum contacts with the forum when two requirements are met: (1) the defendant's contacts with the forum are purposeful, and (2) the cause of action arises from or relates to those contacts. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). When specific jurisdiction is asserted, as here, the minimum contacts analysis focuses on the

relationship among the defendant, the forum, and the litigation. *Guardian Royal Exch. Assurance, Ltd. v. Eng. China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991).

In deciding a special appearance, we must avoid a "divide and conquer" approach to minimum contacts and should instead consider contacts in their totality. *See Largent v. Cassius Classic Cars & Exotics, LLC*, No. 02-20-00248-CV, 2020 WL 7252321, at *5 n.3 (Tex. App.—Fort Worth Dec. 10, 2020, no pet.) (mem. op.); *2007 E. Meadows, L.P. v. RCM Phoenix Partners, L.L.C.*, 310 S.W.3d 199, 208 (Tex. App.—Dallas 2010, pet. denied) ("considering the totality of the facts of the case and the quality and nature of the alleged contacts" in deciding special appearance). Our "analysis does not depend on 'mechanical tests' but on a qualitative assessment of any relevant conduct demonstrating purposeful availment." *See State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 416 (Tex. 2023).

### a. Initial pleading burden

Blue Racer had the initial burden to plead sufficient allegations to permit a court to exercise personal jurisdiction over Procarsa S.A. de C.V. "This minimal pleading requirement is satisfied by an allegation that the nonresident defendant is doing business in Texas or committed tortious acts in Texas." *Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 126 (Tex. App.—Dallas 2021, no pet.) (en banc). Blue Racer pleaded that Procarsa S.A. de C.V. is doing business in the State

–12–

of Texas.  Blue Racer also alleged it purchased pipe in Dallas that had been manufactured by Procarsa S.A. de C.V., which made express representations and warranties concerning the pipe's attributes.  Despite using the pipe for its intended purpose, Blue Racer alleged the pipe ruptured during its testing process, and Blue Racer subsequently discovered the failure was due to defects that occurred during the manufacturing process.  Blue Racer alleged Procarsa S.A. de C.V. placed a defective, dangerous product into the stream of commerce, and as a result, it sustained damages from the loss.  We conclude Blue Racer's allegations are sufficient to meet its initial pleading burden.  *See id.*

### b.  Purposeful availment

Because Blue Racer met its initial burden, the burden shifted to Procarsa S.A. de C.V. to negate all potential bases for personal jurisdiction pleaded by Blue Racer. *See TV Azteca*, 490 S.W.3d at 36 n.4.  Procarsa S.A. de C.V. contends it offered evidence showing its sole purpose "is to provide inspection, testing and certification services in Mexico of certain products manufactured by Industrial, a Mexican corporation," and that it is not registered to do business in Texas, has no operations, property, or employees in Texas, and that its only contact with the United States is its licensure by API, an entity headquartered in Washington, D.C.  Procarsa S.A. de C.V. further argues that it established that Industrial Procarsa paid it for its services—not any other entity—and Procarsa S.A. de C.V. did not know the location of Steel Professionals, with which it had no contact.  The post-rupture testing in

–13–

Houston, Procarsa S.A. de C.V. contends, "had nothing to do with Blue Racer's cause of action, or its claimed injuries and damages."

Blue Racer argues Procarsa S.A. de C.V.'s involvement in the manufacture of the pipe,[3] its representations to Texas-based buyers and end users regarding the pipe, and its affiliation with the Texas-based distributor were sufficient to establish minimum contacts.  We agree with Blue Racer.

Under what the supreme court has termed "stream-of-commerce-plus precedent," specific jurisdiction exists if a nonresident defendant places goods into the stream of commerce "with the expectation that they will be purchased by consumers in the forum state."  *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 13 (Tex. 2021) (quoting *Moki Mac*, 221 S.W.3d at 577).  The exercise of jurisdiction is permitted "not when the defendant merely foresees his product ending up there" but only when the defendant targets the forum.  *Id.*  In resolving questions of specific jurisdiction, we look to the defendant's conduct, as well as the economic realities of the market the defendant seeks to serve.  *Id.* (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 885 (2011)).

In *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010), a German manufacturer of hoses and fittings established a Texas distributorship based in

---

[3] We note that, although Procarsa S.A. de C.V. challenged the admissibility some of Blue Racer's special appearance evidence, the trial court never ruled on Procarsa S.A. de C.V.'s objections; consequently, the evidence remains part of the record for this appeal.  *See* TEX. R. APP. P. 33.1; *Hause v. LG Chem, Ltd.*, 658 S.W.3d 714, 721 (Tex. App.—El Paso 2022, pet. denied).

Houston. The manufacturer sold a hose to the distributor, which sold the hose to the plaintiff's employer. *Id.* After the hose ruptured and injured the plaintiff, he sued the manufacturer and distributor, in addition to others. *Id.* The Texas Supreme Court, in deciding whether the manufacturer purposefully availed itself of the Texas market, noted that an entity's awareness "'that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.'" *Id.* at 873 (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (plurality op.)). Instead, additional conduct beyond "merely placing the product in the stream of commerce" indicating an intent or purpose to serve the forum's market is required. *Id.*; *Asahi*, 480 U.S. at 112; *see also Volkswagen Aktiengesellschaft*, 669 S.W.3d at 417; *LG Elecs., Inc. v. Lovers Tradition II, LP*, No. 05-19-01304-CV, 2020 WL 4281965, at *12 (Tex. App.—Dallas July 27, 2020, pet. dism'd) (mem. op.). Examples of such conduct include (1) designing the product for the market in the forum state, (2) advertising in the forum state, (3) establishing channels for providing regular advice to customers in the forum state, and (4) marketing the product through a distributor who has agreed to serve as the sales agent in the forum state. *Spir Star*, 310 S.W.3d at 873; *Asahi*, 480 U.S. at 112. When an out-of-state manufacturer specifically targets Texas as a market for its products, "that manufacturer is subject to a product liability suit in Texas based on a product sold here, even if the sales are conducted through a Texas distributor or

–15–

affiliate." *Spir Star*, 310 S.W.3d at 874. Purposeful availment of local markets may be indirect, i.e., through affiliates or independent distributors. *Id.*; *see also Luciano*, 625 S.W.3d at 9 ("specific jurisdiction over nonresident manufacturers is often premised on 'indirect' sales by independent distributors or agents").

Here, there is no dispute that Procarsa S.A. de C.V., as the only Procarsa entity licensed by API, played an essential role in the manufacture of the pipe by, at the very least, providing testing and certification services. That role was not limited to being a mere cog in the wheel of a manufacturing process in Mexico but was instead one of continuing importance, as Blue Racer's evidence showed that the purchaser in Texas relied on stenciling on the pipe and the mill test report provided by Procarsa S.A. de C.V. to ensure the pipe met API standards. Additionally, Blue Racer alleged Procarsa S.A. de C.V. is one among a "family of entities" with the other Procarsa entities, including Industrial Procarsa and Procarsa Tube & Pipe, the latter of which is a Texas company. Although there is no evidence before us that the purpose of this Texas-based distributor is to target the Texas market specifically, *see Spir Star*, 310 S.W.3d at 875, Procarsa S.A. de C.V. did not negate Blue Racer's allegations that Procarsa S.A. de C.V. belongs to this "family of entities" or that the related Procarsa entities sell their products from their Texas headquarters "to customers throughout Texas." Moreover, in resolving questions of specific jurisdiction, we look to the economic realities of the market in question, *see Luciano*, 625 S.W.3d at 13, and the reality is that "Texas is well known to be one of the largest oil and gas producers,

–16–

refiners, and users in the United States, and thus has a proportional need for pipe to transport those products." *Far E. Mach. Co. v. Aranzamendi*, No. 05-21-00267-CV, 2022 WL 4180472, at *5 (Tex. App.—Dallas Sept. 13, 2022, pet. denied) (mem. op.).

We think these facts, considered in their totality, *see 2007 E. Meadows, L.P.*, 310 S.W.3d at 208, make this case unlike recent precedents from this Court finding no specific jurisdiction after applying stream-of-commerce-plus precedent. *See Aranzamendi*, 2022 WL 4180472 (concluding court lacked specific jurisdiction when Taiwanese company sold pipe to Canadian entity in Taiwan and arranged for shipping the pipe to Houston because, although the Taiwanese company had a reasonable expectation some of its pipe would enter Texas, there was no "plus" factor evincing intent to serve forum state). In *LG Electronics*, for instance, an entity organized in the Republic of Korea, LGE, manufactured HVAC systems that were then sold in Korea to its wholly-owned, Delaware-based subsidiary, LGEUS, which in turn sold them to Texas Air, an independent contractor that had a written agreement with LGEUS under which it was an authorized LGEUS "applied representative." *LG Elecs.*, 2020 WL 4281965, at *3–5. Texas Air sold the HVAC systems to other entities, which installed the equipment for the plaintiff. *Id.* *5. After examining a number of other purported contacts, this Court concluded there was legally insufficient evidence to support the conclusion that LGE purposefully availed itself of the benefits and protections of Texas laws. *Id.* at *16.

–17–

Unlike the case before us now, LGE's evidence showed it made no representations regarding the equipment at issue. *Id.* at *3. Here, Procarsa S.A. de C.V. prepared the mill test report certifying the pipe met certain standards, Blue Racer alleges the report was a representation by Procarsa S.A. de C.V. to that effect, and that representation is central to Blue Racer's claims in this litigation. Additionally, in *LG Electronics*, there was nothing like the economic realities of the market at issue here, or the "family of entities" alleged by Blue Racer discussed above. Procarsa S.A. de C.V. argues that Blue Racer cannot rely on the contacts of the related Procarsa entities to demonstrate purposeful availment. But the issue before us is not whether the actions of the related entities can be imputed to Procarsa S.A. de C.V.; instead, our concern is with Procarsa S.A. de C.V.'s conduct directed towards this forum, and we consider the other entities to understand whether Procarsa S.A. de C.V. had a substantial connection with the forum, whether it had an expectation the pipes it certified would be sold in the forum, and whether its mill test report would therefore be used to sell pipe to purchasers in the forum. *See Spir Star*, 310 S.W.3d at 874; *Moki Mac*, 221 S.W.3d at 577. In other words, it is Procarsa S.A. de C.V.'s relationship with the other entities—not the actions of the other entities—we consider in determining whether Procarsa S.A. de C.V. purposefully availed itself of the forum, although we acknowledge that those relationships standing alone would be an insufficient basis for jurisdiction. *See LG Elecs.*, 2020 WL 4281965, at *14.

Procarsa S.A. de C.V. also relies on *Asahi* in its briefing in arguing that it engaged in no acts purposefully directed towards the forum. In *Asahi*, the plaintiff was involved in a motorcycle accident and was severely injured. *Asahi*, 480 U.S. at 105. He sued, in California, the manufacturer of the motorcycle's tire tube, which in turn filed a cross-complaint against Asahi, the manufacturer of the tube's valve assembly. *Id.* at 106. Asahi was a Japanese corporation that manufactured valves in Japan and sold some of them in Taiwan to the tube manufacturer; these sales accounted for between .44 and 1.24 percent of Asahi's total sales. *Id.* Twenty percent of the tube manufacturer's United States sales were made in California. *Id.* The president of Asahi stated in his declaration he never contemplated that its limited sales of valves to the tube manufacturer in Taiwan would subject it to lawsuits in California. *Id.* at 107. On these facts, the United States Supreme Court concluded that Asahi had not taken any action to purposefully avail itself of the California market. *Id.* at 112. The court stated that the "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed towards the forum state," and it articulated the "additional conduct" standard we described above. *Id.*

We do not find *Asahi* instructive here. Procarsa S.A. de C.V. did not merely place a product into the stream of commerce that fortuitously ended up in Texas. *See Moki Mac*, 221 S.W.3d at 575 ("the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated"). Procarsa S.A. de C.V., as alleged by

Blue Racer, is one entity among a family of entities operating on both sides of the Texas–Mexico border in an industry with a heavy presence in Texas. Procarsa S.A. de C.V. participated in the manufacture of the pipe and prepared a mill test report that traveled with the pipe to purchasers in Texas to assure them of the pipe's fitness. Given all of this, we conclude Procarsa S.A. de C.V. engaged in "additional conduct" purposefully availing itself of the Texas market. *See Hause*, 658 S.W.3d at 729 (observing that "certain factual scenarios will not fit squarely with the examples of additional conduct" outlined in *Asahi* and that "[t]he test for personal jurisdiction is not a mechanical one, and courts ought not approach these cases poised to check off boxes to determine if there is additional conduct").

Finally, although there is no evidence here, unlike *Spir Star*, for example, that Procarsa S.A. de C.V. established the Texas-based distributor, Procarsa Tube & Pipe, we cannot conclude this difference is jurisdictionally significant given that "reasonable expectation," not "right of control," is the controlling issue under the stream of commerce doctrine. *See Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 201 (Tex. 1985) (per curiam); *Aranzamendi*, 2022 WL 4180472, at *5. We conclude Procarsa S.A. de C.V. should have reasonably expected the pipes it certified would be purchased by consumers in Texas, a forum that, by virtue of its relationship with the other Procarsa entities and the economic realities of the market, Procarsa S.A. de C.V. targeted. *See Luciano*, 625 S.W.3d at 13.

### c. Nexus requirement

We now consider whether Blue Racer's suit arises from or relates to the above-described contacts. *Am. Type Culture Collection*, 83 S.W.3d at 806. Forum contacts may be related to the operative facts of the litigation even without a causal connection between the two. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 361–66 (2021). Here, Blue Racer alleges it purchased the pipe in Dallas, where "the material considerations relating to its decision to purchase the specific pipe in question" occurred, and that it relied on Procarsa S.A. de C.V.'s representations that the pipe met API's specifications for the pipe in question. Blue Racer alleges the pipe did not in fact meet those specifications, which is why it ruptured and caused Blue Racer damages, for which it seeks compensation based on causes for strict products liability, breach of warranty, negligent misrepresentation, and negligence. We conclude these facts and causes of action relate to Procarsa S.A. de C.V.'s contacts with Texas, which included the preparation of the mill test report certifying the pipe met the pertinent standards and traveled with the pipe after its sale in Texas.

### 2. Fair play and substantial justice

Finally, we must consider whether the exercise of jurisdiction here offends traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 476–77. In this analysis, we consider five factors, if applicable: (1) the burden on the defendant, (2) the interests of the forum in adjudicating the dispute, (3) the

plaintiff's interest in obtaining convenient and effective relief, (4) the international judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several nations in furthering fundamental substantive social policies. *Moncrief Oil Int'l*, 414 S.W.3d at 155. As long as a defendant has minimum contacts with Texas, this "fair-play prong" will be difficult for a defendant to satisfy. *Guardian Royal Exch. Assurance*, 815 S.W.2d at 231. To do so, he must present a "compelling case" that some factor or consideration would render jurisdiction unreasonable. *Id.*

We conclude that asserting personal jurisdiction over Procarsa S.A. de C.V. does not offend traditional notions of fair play and substantial justice. The fact that Procarsa S.A. de C.V. is headquartered in Mexico does not, alone, defeat jurisdiction here; although subjecting it to suit in Texas imposes a burden on the company, "the same can be said of all nonresidents." *Moncrief Oil Int'l*, 414 S.W.3d at 155. As described above, after the failure of the pipe, multiple Procarsa S.A. de C.V. representatives traveled to Houston to monitor post-rupture testing and thus have a familiarity with the forum. Any burden to Procarsa S.A. de C.V. is mitigated by the convenience to Blue Racer, a Dallas-based company, which allegedly purchased the pipe in the forum, and by the state's interest in adjudicating disputes about products sold here in an industry important to the state. Finally—and significantly—judicial economy is promoted by litigating claims against Procarsa S.A. de C.V. in one court

with the other defendants not challenging jurisdiction. *See id.* at 155. We overrule

Procarsa S.A. de C.V.'s appellate issues.

## CONCLUSION

We affirm the trial court's order denying the special appearance.


230901f.p05

/Ken Molberg/

KEN MOLBERG
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

PROCARSA S.A. DE C.V.,
Appellant

No. 05-23-00901-CV          V.

BLUE RACER MIDSTREAM, LLC,
Appellee

On Appeal from the 68th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-21-07310.
Opinion delivered by Justice
Molberg. Justices Nowell and
Kennedy participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee BLUE RACER MIDSTREAM, LLC recover its costs of this appeal from appellant PROCARSA S.A. DE C.V.

Judgment entered this 11th day of December, 2024.