

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00309-CV

FURTEK & ASSOCIATES, L.L.C.  APPELLANTS
AND RICHARD E. FURTEK

V.

MAXUS HEALTHCARE  APPELLEE
PARTNERS, LLC

----------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 017-275219-14

----------

### MEMORANDUM OPINION[1]

----------

In this interlocutory appeal, we review the trial court's denial of the special

appearance filed by appellants Furtek & Associates, L.L.C. (Furtek & Associates)

and Richard Furtek (Furtek). *See* Tex. Civ. Prac. & Rem. Code Ann.

§ 51.014(a)(7) (West Supp. 2015). We conclude that neither Furtek &

[1]*See* Tex. R. App. P. 47.4.

Associates nor Furtek had sufficient minimum contacts with Texas for a Texas court to assert specific jurisdiction over them. We also conclude that Furtek & Associates and Furtek did not have the type of continuous and systematic general business contacts with Texas that would support general jurisdiction. We therefore reverse the trial court's order denying the special appearance and render judgment dismissing the claims against Furtek & Associates and Furtek for lack of personal jurisdiction.

## I. BACKGROUND

Furtek & Associates assists companies in the health care field with mergers, acquisitions, and restructuring. Its principal place of business is located in King of Prussia, Pennsylvania. Furtek and his wife are the company's only employees and they both reside in Pennsylvania. Furtek is a certified public accountant licensed in Pennsylvania and is the sole owner of Furtek & Associates. He has never been licensed as a CPA in Texas. Moreover, Furtek & Associates does not maintain an office, a registered agent, real or personal property, bank accounts, a mailing address, employees, records, or telephone listings in Texas. Nor does Furtek & Associates solicit any business clients in Texas.

In January 2012, Furtek & Associates was retained by a Fort Worth company, Texas RHH, LLC d/b/a Renew Home Health Care (Renew), to assist it with getting its financial records in order for a potential sale of the company. An unrelated, third-party broker in Florida introduced Renew's president to Furtek;

2

Furtek did not solicit Renew's business by contacting the company in Texas. Furtek & Associates and Renew entered into a contract dated January 31, 2012, which provided that Furtek & Associates would assist Renew's "personnel with organizing [Renew's] books and records in connection with a potential transaction." The initial engagement consisted of two phases:

> Phase One: Organize the historical financial statements of the business through February 28, 2012, related add back adjustments and other significant supporting schedules.

> Phase Two: If requested by the Company, we will assist with organizing a comprehensive on-line due diligence room, preparing responses to inquiries from prospective buyers, preparing schedules to an acquisition agreement, and otherwise supporting a transaction process.

The contract also covered the possibility of future work as follows:

> Additionally, at your request we are available to assist you with other matters that fall within our expertise. This may include the preparation of pro forma financials, evaluation of offers, business presentations, billing assistance as well as compliance and operations assessments.

The contract contained a choice-of-law clause, providing that it would be "governed by and shall be construed in accordance with the laws of the State of Pennsylvania."

In July 2012, six months after Furtek & Associates entered into the contract with Renew, Furtek traveled to Texas to attend the 2012 National Association for Home Care & Hospice meeting and exhibition. While in Texas,

3

Furtek visited Renew's office in Fort Worth to meet with Misty Chaney-Brady (Chaney-Brady), Renew's president. During this meeting, Furtek met with Renew's employees, toured the office, and discussed business with Chaney-Brady. Furtek also went out to dinner that evening with Chaney-Brady and her husband. Furtek billed Renew six and a half hours for his time that day. He did not bill Renew for his travel expenses to Fort Worth because his primary reason for being in Texas was to attend the unrelated meeting and exhibition.

The following month, Furtek & Associates and Renew entered into an amendment to their contract whereby Furtek & Associates agreed to expand its engagement to include assisting Renew with improving Renew's insurance billing and collection processes, cash applications, and follow-up procedures for old, unpaid claims. An independent contractor for Furtek & Associates, Belinda Yanchik (Yanchik), was designated to lead this project. Yanchik traveled to Renew's Fort Worth office on three separate occasions between August and October 2012 to work on the project. Furtek & Associates separately billed Renew for Yanchik's sixteen days of work in Fort Worth.

On November 5, 2012, Appellee Maxus Healthcare Partners, LLC (Maxus), a Dallas company, sent Renew a letter of intent to acquire the company. As anticipated in the original contract between Furtek & Associates and Renew, Furtek proceeded to assist Chaney-Brady with setting up an external due diligence website where Maxus could review relevant financial documents and decide whether to proceed with its proposed acquisition. On December 31,

4

2012, Renew and Maxus signed an asset-purchase agreement in which Maxus agreed to purchase Renew's assets.

Beginning in September 2012, Furtek and Chaney-Brady exchanged numerous emails in which they communicated about financial documents and, later, details of the sale to Maxus. Many of the emails contained financial documents that Furtek drafted outside of Texas or documents that Furtek reviewed to give Chaney-Brady feedback. Furtek and Chaney-Brady spoke on the telephone a total of nine times in November and December 2012. Furtek also participated in several telephone calls and exchanged emails with Maxus's president, Angie King (King), during November and December 2012. At the time of all of the calls and emails, Furtek was located either in Pennsylvania or somewhere outside of Texas while Chaney-Brady and King were located in Texas. Furtek prepared all of the financial documents for Renew while he was either in Pennsylvania or somewhere outside of Texas.

After the sale was complete, Maxus discovered that there was an outstanding tax lien of almost $3 million against Renew. Maxus filed suit against Renew, Furtek & Associates, Furtek, and others,[2] alleging that Renew, Furtek & Associates, and Furtek never disclosed the existence of this lien to it and that, as a result, it overpaid for Renew. Maxus also contended that Renew, Furtek & Associates, and Furtek misrepresented, concealed, and conspired to give Maxus

---

[2]The other named defendants and Maxus's claims against them are not at issue in this appeal.

misinformation about the true state of Renew's financial status. Furtek & Associates and Furtek filed a special appearance, arguing that the trial court did not have personal jurisdiction over them. Following a nonevidentiary hearing, the trial court denied Furtek & Associates and Furtek's special appearance. Furtek & Associates and Furtek appeal from the trial court's denial.

## II. DISCUSSION

### A. STANDARD OF REVIEW

The standard of review and the burden of proof for a trial court's ruling on a special appearance are well-settled. We determine whether a trial court has personal jurisdiction over a defendant under a de novo standard. *BMC Software Belgium, L.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Fish v. Tandy Corp.*, 948 S.W.2d 886, 891–92 (Tex. App.—Fort Worth 1997, writ denied). The plaintiff has the initial burden to plead sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). Once the plaintiff sufficiently pleads these jurisdictional allegations, the burden then shifts to the defendant to negate all of the alleged bases of personal jurisdiction. *Kelly*, 301 S.W.3d at 658; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). If, as here, the trial court does not make any findings of fact and conclusions of law when ruling on a special appearance, all facts necessary to

6

support the judgment are implied when supported by the evidence. *BMC Software*, 83 S.W.3d at 795.

## B. DUE PROCESS UNDER THE FOURTEENTH AMENDMENT

Texas courts can assert personal jurisdiction over a nonresident defendant if the state's long-arm statute authorizes it and the exercise of jurisdiction complies with federal constitutional due-process requirements. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). The Texas long-arm statute permits Texas courts to exercise personal jurisdiction over a nonresident defendant doing business in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 2015). A nonresident does business in this state if the nonresident (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state, (2) commits a tort in whole or in part in this state, or (3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state. *Id.* Federal due process is satisfied if the nonresident defendant has "minimum contacts" with Texas and the exercise of personal jurisdiction over the nonresident defendant does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945).

A defendant's contacts may give rise to two types of personal jurisdiction: specific and general jurisdiction. When specific jurisdiction is asserted, we focus on the relationship between the defendant, the forum, and the litigation.

7

*Moki Mac*, 221 S.W.3d at 576. In short, the asserted cause of action must "arise from or relate to" the nonresident defendant's contacts with the forum. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991). General jurisdiction, however, is a more demanding test to meet than specific jurisdiction. General jurisdiction requires that the nonresident defendant's contacts with the state be "continuous and systematic general business contacts." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S. Ct. 1868, 1872–73 (1984). If minimum contacts are present, whether general or specific, the nonresident defendant then bears the burden to establish that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *Prof'l Ass'n of Golf Officials v. Phillips Campbell & Phillips, L.L.P.*, No. 02-12-00426-CV, 2013 WL 6869862, at *5 (Tex. App.—Fort Worth Dec. 27, 2013, pet. denied) (mem. op.).

On appeal, Furtek & Associates and Furtek contend that a Texas trial court does not have either general or specific personal jurisdiction over them. We therefore address both general and specific personal jurisdiction.

### III. APPLICATION

#### A. SUFFICIENCY OF PLEADING TO INVOKE LONG-ARM STATUE

We first determine whether Maxus met its initial burden of pleading sufficient allegations to bring Furtek & Associates and Furtek within the provisions of the Texas long-arm statute, without reaching the merits of those allegations. *See Hoffman v. Dandurand*, 143 S.W.3d 555, 559 (Tex. App.—

8

Dallas 2004, no pet.). Maxus must have pleaded sufficient allegations to support its contentions that Furtek & Associates and Furtek "contract[ed] by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part" in Texas or "commit[ed] a tort in whole or in part" in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042(1), (2).[3]

Maxus pleaded sufficient allegations to bring Furtek & Associates and Furtek within our long-arm statute. In its live pleading, Maxus alleged that Furtek & Associates is "a Pennsylvania limited liability company doing business in and purposely directing its business activities to Texas." It similarly pleaded that Furtek "is an individual residing in Pennsylvania . . . [who] does business in and purposely directs his business activities to Texas." Maxus also alleged that Furtek & Associates and Furtek "knowingly and intentionally entered [into] a contract" with Renew, that Furtek traveled to Texas to meet with Chaney-Brady to prepare Renew's financials for the eventual sale to Maxus, and that Furtek & Associates sent other personnel to Texas to work on-site to provide additional financial services to Renew.

## B. DUE-PROCESS ANALYSIS

Because Maxus sufficiently pleaded allegations to bring Furtek & Associates and Furtek within the provisions of the Texas long-arm statute, the

---

[3]The evidence is undisputed that Furtek & Associates and Furtek did not recruit Texas residents for employment inside or outside Texas. *See id.* § 17.042(3).

9

burden then shifted to them to negate all pleaded jurisdictional bases and prove a violation of their due-process rights. *See Retamco*, 278 S.W.3d at 337.

## 1. Specific Jurisdiction

Furtek & Associates and Furtek argue that exercising specific jurisdiction over them would violate due process because (1) there is no evidence in the record of sufficient contacts between them and Texas and (2) any exercise of jurisdiction would offend traditional notions of fair play and substantial justice. When a plaintiff asserts that a court has specific jurisdiction over a nonresident defendant, the minimum-contacts analysis focuses on the relationship between the defendant, the forum, and the litigation. *Guardian Royal*, 815 S.W.2d at 228. Minimum contacts are sufficient when a nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958). In determining what actions constitute purposeful availment, we consider (1) the defendant's own actions and not the unilateral activity of another party, (2) whether the defendant's actions were purposeful rather than "random, isolated, or fortuitous," and (3) whether the defendant sought "some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S. Ct. 1473, 1478 (1984); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). The nonresident defendant's contacts are considered as a whole, and we focus on the quality, not the quantity, of these contacts.

10

*Retamco*, 278 S.W.3d at 339; *Guardian Royal*, 815 S.W.2d at 230 n.11. A choice-of-law clause, such as the one contained in the contract between Furtek & Associates and Renew, is one factor to consider in determining whether the forum court has personal jurisdiction over the nonresident defendant. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482, 105 S. Ct. 2174, 2187 (1985); *Michiana*, 168 S.W.3d at 792; *2007 E. Meadows, L.P. v. RCM Phoenix Partners, L.L.C.*, 310 S.W.3d 199, 208 (Tex. App.—Dallas 2010, pet. denied); *Citrin Holdings, LLC v. Minnis*, 305 S.W.3d 269, 282 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Exchequer Fin. Group, Inc. v. Stratum Dev., Inc.*, 239 S.W.3d 899, 908 (Tex. App.—Dallas 2007, no pet.).

### (a) Minimum contacts

In its brief, Maxus argues that the following contacts, taken together, established specific jurisdiction over Furtek & Associates and Furtek in Texas:

- Furtek & Associates contracted with Renew, a Texas company, to provide professional accounting services;

- Furtek knew that Renew was a Texas company;

- Renew wired a $10,000 retainer to Furtek using its Texas bank account;

- Furtek had numerous telephone calls and emails with Renew's president who was located in Fort Worth;

- Furtek traveled to Fort Worth to meet with Chaney-Brady on July 17, 2012;

11

- Furtek & Associates sent an independent contractor to work with Renew employees on three separate occasions in the fall of 2012;

- Furtek knew that Maxus would rely on the financial documents that Furtek organized and prepared when deciding whether to acquire Renew;

- Furtek actively participated in assisting Chaney-Brady with the sale to Maxus by providing feedback on proposals, providing financial information, and uploading it onto a due diligence website that Maxus relied on; and

- Furtek communicated directly with King, Maxus's president, by email and telephone.

Furtek & Associates and Furtek contend, on the other hand, that these actions do not rise to the level of the sufficient minimum contacts that are constitutionally required for assertion of personal jurisdiction over them.

Texas courts have consistently held that telephone calls, emails, and mail between a nonresident defendant and a Texas resident are insufficient minimum contacts to establish specific jurisdiction. These communications are insufficient to confer specific jurisdiction over nonresident defendants who use phones, computers or mail to do business with Texas residents. *E.g.*, *Bryan v. Gordon*, 384 S.W.3d 908, 916–17 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (making multiple telephone calls and sending emails to Texas resident held insufficient for assertion of specific jurisdiction); *Ahrens & DeAngeli, P.L.L.C. v. Flinn*, 318 S.W.3d 474, 484 (Tex. App.—Dallas 2010, pet. denied) ("[t]elephone

12

calls and correspondence as activities directed at the forum are generally insufficient" to establish minimum contacts); *2007 E. Meadows*, 310 S.W.3d at 205 (sending due-diligence documents and monthly rent rolls to Texas held insufficient minimum contacts). The rationale underlying these cases is that jurisdiction should not be determined by the fortuitous location of the Texas resident when the nonresident defendant communicates with them. *Bryan*, 384 S.W.3d at 917; *see also Michiana*, 168 S.W.3d at 791 ("[C]hanges in technology have made reliance on phone calls obsolete as proof of purposeful availment.").

We also do not believe that Furtek's visit to Texas to attend an unrelated meeting an exhibition constituted "purposeful availment" of the privileges of conducting business in Texas. The evidence is undisputed that Furtek met with Chaney-Brady only because he happened to be in the area for the conference. Furtek did not purposefully travel to Texas solely to visit with Chaney-Brady or to perform work that could only be done on-site. Nor did Furtek bill Renew for his travel expenses to Texas because they would have been incurred regardless of whether he met with Chaney-Brady. This visit was the type of "fortuitous" contact with the forum that is not purposeful availment. *See Michiana*, 168 S.W.3d at 785.

With respect to Yanchik's three trips to Texas, the evidence shows that they were for services unrelated to the sale of Renew to Maxus. Yanchik trained Renew employees on-site to improve the company's collection procedures; she

13

was not involved with preparing financial documents for the eventual sale to Maxus. While her contacts with Texas may be analyzed in a general-jurisdiction analysis, they are irrelevant to our specific-jurisdiction inquiry because the contacts are unrelated to the cause of action. *See Burger King*, 471 U.S. at 472, 105 S. Ct. at 2182 (stating litigation must "result[] from alleged injuries that 'arise out of or relate to'" contacts with the forum for assertion of specific jurisdiction); *Moki Mac*, 221 S.W.3d at 576 ("Specific jurisdiction is established if the defendant's alleged liability 'aris[es] out of or [is] related to' an activity conducted within the forum." (quoting *Guardian Royal*, 815 S.W.2d at 228)).

Maxus's remaining alleged contacts will not support an assertion of specific jurisdiction over Furtek & Associates or Furtek by Texas courts. The fact that Renew sent Furtek & Associates a check drawn on a Texas bank account is an isolated and random contact that does not show Furtek & Associates purposefully directed an activity to Texas to avail itself of the forum. *See Myers v. Emery*, 697 S.W.2d 26, 32 (Tex. App.—Dallas 1985, no writ). That Furtek & Associates contracted with a Texas company is also insufficient to establish purposeful availment. *See Burger King*, 471 U.S. at 478, 105 S. Ct. at 2185; *Lisitsa v. Flit*, 419 S.W.3d 672, 680 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Olympia Capital Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 417 (Tex. App.—Dallas 2008, no pet.). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with

14

other persons affiliated with the State." *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014) (quoting *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183)). Finally, the choice-of-law clause in the contract at issue supports our conclusion that Furtek & Associates and Furtek did not intend to avail themselves of the privileges of doing business in Texas and believed that any dispute over the contract would be resolved under Pennsylvania law.

### (b) Cases relied on by Maxus

Maxus contends that this case is analogous to a prior decision of this court and to a Beaumont Court of Appeals case: *Carlile Bancshares, Inc. v. Armstrong*, Nos. 02-14-00014-CV, 02-14-00018-CV, 2014 WL 3891658 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op.) and *Deloitte & Touche Netherlands Antilles & Aruba v. Ulrich*, 172 S.W.3d 255 (Tex. App.—Beaumont 2005, pet. denied). In *Carlile*, we held that two Colorado residents had sufficient minimum contacts with Texas for a Texas court to assert specific jurisdiction over them. 2014 WL 3891658, at *13–16. Maxus argues this case is factually indistinguishable, pointing to evidence in *Carlile* that the Colorado residents (1) agreed to seek out the buyer in Texas, (2) compiled financial information for use by the Texas buyer, and (3) directed emails to the Texas buyer. *Id.* at *13. We find *Carlile* distinguishable for two reasons. First, the nonresidents in that case specifically agreed to seek out Carlile in Texas regarding a potential acquisition. *Id.* This action of the nonresident defendants themselves was purposeful and was clear evidence that they sought a benefit or advantage by

15

availing themselves of Texas's jurisdiction. *Id.* In this case, a third-party broker located in Florida initiated the contact between Furtek and Chaney-Brady; Furtek never sought out Renew's business by contacting it directly. The fact that a third-party broker brings the parties together to conduct business is a factor that should be considered in a specific-jurisdiction analysis because it is evidence that the nonresident defendant did not intend to purposefully avail itself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its laws. *See 2007 E. Meadows*, 310 S.W.3d at 205; *Olympia Capital*, 247 S.W.3d at 416; *3-D Elec. Co., Inc. v. Barnett Constr. Co.*, 706 S.W.2d 135, 142 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). Second, one nonresident in *Carlile* traveled to Texas twice to meet with the buyer to discuss the specifics of the merger that they were negotiating. *Carlile*, 2014 WL 3891658, at *13. These contacts were direct and significant contacts with the forum to finalize the merger agreement. By deliberately and purposefully engaging in these activities in Texas, the Colorado residents in *Carlile* submitted themselves to the jurisdiction of Texas courts. *Id.* at *14; *see Michiana*, 168 S.W.3d at 784. Here, Furtek & Associates and Furtek did not create a substantial connection by personally conducting negotiations or preparing or producing documents in Texas. Although physical presence in the state is not required to meet the requirements of specific jurisdiction, it can "enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there." *Burger King*, 471 U.S. at 476, 105 S. Ct. at 2184.

16

Similarly, we find *Deloitte & Touche* inapposite. In that case, auditors from Deloitte & Touche, an accounting firm organized under the laws of the Netherlands Antilles, traveled from the Netherlands to Texas to do substantial portions of their audit on a Texas bank. *Deloitte & Touche*, 172 S.W.3d at 263. When Deloitte & Touche entered into the contract with the Texas bank, it knew most of its audit work would be performed in Texas and that its auditors would spend a significant amount of time in Texas. *Id.* Thus, it was foreseeable to Deloitte & Touche that it could be haled into a Texas court for actions it took in Texas. *Id.* There is no such extended physical presence in Texas in the case before us; rather, it involves a fortuitous visit by Furtek and three visits by Yanchik for unrelated work. Additionally, the court in *Deloitte & Touche* noted that there was evidence a significant portion of the business operations of both the Texas bank and Deloitte & Touche was located in Texas. *Id.* Neither Furtek & Associates nor Furtek have any operations in Texas.

In support of its position, Maxus also relies on a line of Texas cases holding that specific jurisdiction exists if the nonresident defendant can forsee that his actions will cause a direct injury to a Texas resident residing in Texas. *See, e.g.*, *Weber Co., Inc. v. Back-Haul Bulk Carriers, Inc.*, No. 14-02-00240-CV, 2002 WL 31769418, at *3 (Tex. App.—Houston [14th Dist.] Dec. 12, 2002, no pet.) (not designated for publication); *Cartlidge v. Hernandez*, 9 S.W.3d 341, 348 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Maxus contends that because Furtek & Associates and Furtek could forsee that Maxus would be

injured in Texas when relying on the financial information, it is fair to subject them to the jurisdiction of Texas courts.

We disagree. First, specific jurisdiction focuses on the relationship between the nonresident defendant and the forum state, not on the relationship between the nonresident defendant and the plaintiff. *Walden*, 134 S. Ct. at 1122. The proper analysis focuses on the contacts the nonresident defendant himself creates with the forum state, not the plaintiff's actions that connect the nonresident defendant to the forum. *Id.* Second, the line of cases relied upon by Maxus were decided before the supreme court's decision in *Michiana* where the court specifically rejected the argument that Texas has specific jurisdiction if the nonresident defendant "directed a tort" at a Texas resident. 168 S.W.3d at 788–90. The court stated that the directed-a-tort analysis was unworkable because it incorrectly focused on the plaintiff and requires the court to analyze the merits of the claim at the special-appearance hearing. *Id.* at 790–91.

We hold that the record does not contain sufficient evidence of the minimum contacts necessary to conclude that Furtek & Associates and Furtek purposefully availed themselves of the privilege of conducting business within Texas, thus invoking the benefits and protections of Texas law; thus, Furtek & Associates and Furtek met their burden to negate specific jurisdiction. *Hanson*, 357 U.S. at 253, 78 S. Ct. at 1240. We sustain Furtek & Associates and Furtek's first issue.

18

## 2. General Jurisdiction

In their second issue, Furtek & Associates and Furtek contend that Texas courts cannot assert general jurisdiction over them because the contacts they had with Texas were not continuous and systematic. Between 2010 and 2015, Furtek traveled to Texas three additional times apart from attending the 2012 meeting and exhibition. We agree with Furtek & Associates and Furtek that these additional trips, in combination with the other contacts discussed above, are insufficient to establish the type of continuous and systematic business contacts required by the Fourteenth Amendment.

General jurisdiction can be exercised over a nonresident defendant even though a plaintiff's cause of action does not arise out of the nonresident defendant's contacts with the forum if those contacts are "continuous and systematic general business contacts" that make it fair to assert jurisdiction over the defendant. *Helicopteros*, 466 U.S. at 415–16, 104 S. Ct. at 1872–73; *Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 806–07 (Tex. 2002), *cert. denied*, 537 U.S. 1191 (2003). This is a more demanding minimum-contacts analysis than that performed for specific jurisdiction. *Am. Type Culture*, 83 S.W.3d at 807.

The record reveals that since 2010, Furtek traveled to Texas four times. In 2010 and 2012, Furtek traveled to the Dallas/Fort Worth Metroplex to attend the annual National Association for Home Care & Hospice meeting an exhibition. On

two other occasions, Furtek traveled to Texas to attend business meetings on behalf of non-Texas clients.

Furtek & Associates and Furtek's contacts with Texas are insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment. Two meetings with non-Texas clients and attendance at two exhibitions in Texas are not the type of general business contacts that are continuous and systematic in nature. *See Am. Type Culture*, 83 S.W.3d at 809 (stating "attendance at the five Texas conferences does not support the exercise of general jurisdiction" over nonresident defendant). The fortuitous business meeting in Texas with Chaney-Brady is also insufficient to constitute a continuous and systematic contact. S*ee Helicopteros*, 466 U.S. at 416–18, 104 S. Ct. at 1873–74 (concluding "one trip" to forum state by nonresident defendant's CEO to negotiate contract, nonresident's acceptance of checks drawn on Texas bank, and nonresident's "mere purchases, even if occurring at regular intervals," were not continuous or systematic contacts for purposes of general jurisdiction).

The same legal analysis applies to Yanchik's three visits to Texas to train Renew employees on billing and collection procedures. As an independent contractor, Yanchik's travel to Texas did not enhance the nature of Furtek & Associates and Furtek's contacts with Texas. In *Helicopteros*, a South American company sent prospective pilots to Fort Worth for on-site training and to fly helicopters back to South America. 466 U.S. at 411, 104 S. Ct. at 1870. The

company also sent management and maintenance personnel to Fort Worth for technical consultation and for "plant familiarization." *Id.* The Supreme Court found these contacts to be fortuitous in nature, not the general, continuous, and systematic business contacts with the forum state required for the assertion of general jurisdiction. *Id. a*t 418, 104 S. Ct. at 1874. In accordance with this reasoning, Yanchik's contacts would not warrant haling Furtek & Associates and Furtek into a Texas court.

We hold that this evidence does not establish the continuous and systematic business contacts between Furtek & Associates and Furtek and Texas. Thus, Furtek & Associates and Furtek met their burden to negate general jurisdiction. We sustain Furtek & Associates and Furtek's second issue. Having sustained both Furtek & Associates and Furtek's first and second issues, we need not reach the question of whether assertion of personal jurisdiction over these nonresidents would offend traditional notions of fair play and substantial justice. *See* Tex. R. App. P. 47.1; *Prof'l Ass'n of Golf Officials*, 2013 WL 6869862, at *8.

## IV.  CONCLUSION

We do not find evidence in the record to support the trial court's conclusion that Furtek & Associates and Furtek had sufficient contacts with Texas to establish a basis for asserting either specific or general jurisdiction over them. Without such evidence, it was error to deny their special appearance. We therefore reverse the trial court's order denying Furtek & Associates and Furtek's

21

special appearance and render judgment dismissing Maxus's claims against them for want of personal jurisdiction.  *See* Tex. R. App. P. 43.2(c), 43.3.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; GABRIEL and SUDDERTH, JJ.

SUDDERTH, J., dissenting without opinion

DELIVERED:  April 21, 2016